# United States District Court
# Central District of California
# Western Division

CURTIN MARITIME CORP.,

              Plaintiff,

    v.

SANTA CATALINA ISLAND
COMPANY, *et al.*,

              Defendants.

CV 16-03290 TJH (AGRx)

# Order

## JS-6

    The Court has considered the motions to dismiss the Second Amended Complaint ["SAC"] by Defendants Santa Catalina Island Co. ["SCICo"] and Avalon Freight Services, LLC ["AFS"], together with the moving and opposing papers.

    On July 21, 2017, Plaintiff Curtin Maritime Corporation ["Curtin"] filed its SAC alleging: (1) Monopolization in violation of § 2 of the Sherman Act, 15 U.S.C. § 2; (2) Unlawful exclusive dealing arrangements in violation of § 1 of the Sherman Act, 15 U.S.C. § 1; and (3) Unfair business practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*  SCICo and AFS, now, move to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).

**Factual Allegations in the SAC**

The following facts were alleged by Curtin in the SAC, and are accepted as true by the Court for purposes of this motion.  SCICo owns a majority of the land on Catalina not dedicated to a nature conservancy.  SCICo owns and controls Pebbly Beach, the only freight seaport on Catalina.  Air freight to Catalina is impractical, and there are no locations outside of marine sanctuaries where a second seaport could be built.  Accordingly, Catalina residents and businesses must use Pebbly Beach for incoming freight.

For decades prior to March, 2016, Catalina Freight Line ["CFL"], a freight operator, held an exclusive lease to use Pebbly Beach.  In 2012, SCICo issued a Request for Proposals ["RFP"] to identify the next company it would award the exclusive right to use Pebbly Beach upon the expiration of CFL's lease.  From the eight bidders, SCICo selected three finalists – CFL, AFS, and Curtin.  Thereafter, SCICo selected AFS as the winner of the RFP process and entered into an exclusive lease with AFS ["Exclusive Lease"].  The Exclusive Lease gave AFS the exclusive right to access Pebbly Beach for ten years – subject to SCICo's reserved right to use Pebbly Beach to receive goods for its own use or consumption – and contained a revenue sharing provision which obligated AFS to pay SCICo a percentage of its gross revenue earned from using Pebbly Beach for freight.

Curtin contends that AFS's win was a sham because AFS did not meet the requirements of the RFP.  Gregory Bombard, AFS's co-owner and co-manager, entered into an agreement with SCICo prior to the RFP ["Pre-RFP Agreement"] whereby AFS would be awarded the Exclusive Lease in exchange for sharing the freight revenue with SCICo.  Thus, the RFP process was merely a ruse to give AFS's win an aura of legitimacy.

After entering into the Exclusive Lease, AFS applied for a Certificate of Public Convenience and Necessity ["CPCN"] from the California Public Utilities Commission ["CPUC"], a prerequisite to commencing freight operations to Pebbly Beach.  Curtin

protested AFS's CPCN application and filed its own CPCN application. The CPUC granted both CPCN applications, but noted it lacked authority to compel SCICo to grant Curtin access to Pebbly Beach because SCICo is the private owner of a private dock.

**Prior Motions to Dismiss**

On February 17, 2017, the Court dismissed, without prejudice, Curtin's original Complaint because it failed to allege antitrust standing. On June 23, 2017, the Court dismissed, without prejudice, Curtin's First Amended Complaint for three reasons: (1) Curtin failed to allege an antitrust injury for its claims predicated on the Exclusive Lease; (2) Curtin failed to state a claim under § 2 of the Sherman Act as it related to the Pre-RFP Agreement because it failed to allege that AFS and SCICo constituted a singular entity; and (3) The Court declined to exercise supplemental jurisdiction over Curtin's § 17200 claim. Further, the Court advised Curtin that a Second Amended Complaint with pleading deficiencies would result in a dismissal with prejudice. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988).

**Antitrust Injury and Standing**

To sufficiently state its antitrust claims based on the Exclusive Lease, Curtin must allege that the Exclusive Lease caused an antitrust injury. *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998). An antitrust injury requires, *inter alia*, that the alleged injury be "of the type the antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007–1008 (9th Cir. 2003).

The SAC characterizes Curtin's antitrust injury stemming from the Exclusive Lease as the "contractual foreclosure of all competition," rather than SCICo's awarding the Exclusive Lease to AFS, as was alleged in Curtin's two prior complaints. However, the change is a distinction without a difference. Curtin's injury would be the

same had SCICo awarded the lease to multiple companies – resulting in competition and the exclusion of Curtin. *See generally, Lucas Auto. Eng', Inc.*, 140 F.3d at 1232. Therefore, the crux of the alleged injury remains to be the fact that Curtin was not awarded a lease. However, exclusion from an exclusive agreement does not equal an antitrust injury. *See Lucas Auto. Eng', Inc.*, 140 F.3d at 1232.

Curtin argued that *Lucas* is incongruous for five reasons, three of which the Court addressed, and concluded to be unpersuasive, in its June 23, 2017, Order. The two new arguments are that SCICo's decision to award an exclusive agreement impacts Catalina's citizens and that AFS, with its Exclusive Lease, now, controls the downstream market. However, Curtin does not suffer an antitrust injury when consumers in the market may be negatively impacted. *See Glen Holly*, 343 F.3d at 1008. Indeed, "consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury." *Glen Holly*, 343 F.3d at 1008.

Consequently, the SAC, again, failed to sufficiently allege antitrust injury and, therefore, antitrust standing with respect to the Exclusive Lease. Because Curtin's second claim — for unlawful exclusive dealing under § 1 of the Sherman Act — is predicated solely on the Exclusive Lease, that claim must be dismissed.

The Court previously held that Curtin adequately alleged an antitrust injury with respect to the Pre-RFP Agreement. As discussed in the June 23, 2017, Order, Curtin has antitrust standing with respect to the Pre-RFP Agreement.

### The Monopoly Claim under § 2 of the Sherman Act

Curtin's first claim – for monopolization and conspiracy to monopolize in violation of § 2 of the Sherman Act – is based on both the Pre-RFP Agreement and the Exclusive Lease. Because Curtin lacks antitrust standing as to the Exclusive Lease, the Court will consider the § 2 claim only as it relates to the Pre-RFP Agreement.

Section 2 of the Sherman Act makes it unlawful to, *inter alia*, monopolize any

part of the trade or commerce among the several states. 15 U.S.C. § 2. However, an entity is not necessarily monopolizing a part of trade if it refuses to deal with another entity. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985). Generally, entities have the qualified right to choose and, *ipso facto*, to exclude, who it deals with. *See Aspen Skiing*, 472 U.S. at 601. Curtin's § 2 claim is based on two exceptions to this general rule – refusal to deal and denial of access to an essential facility.

To adequately allege that the narrow exception of refusal to deal applies here, a plaintiff must allege, *inter alia*, that there was a unilateral termination of a voluntary and profitable course of dealing. *See LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed. Appx. 554, *2 (9th Cir. 2008). Here, Curtin did not allege that it was in a prior profitable course of dealing with either SCICo or AFS. Accordingly, the SAC did not adequately state a claim for a § 2 violation based on a refusal to deal. *See LiveUniverse*, 304 Fed. Appx. at *2.

The elements of the essential facilities exception are: (1) An essential facility was owned and controlled by a monopolist; (2) Competitors are unable to duplicate the essential facility; (3) The essential facility's owner-operator denied use of the essential facility to a competitor; and (4) The competitors' use of the facility is feasible. *See City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1380 (9th Cir. 1992). Although Curtin's SAC need not contain direct or inferential allegations with respect to all material elements of this claim, it does need to allege enough facts to set forth a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 562 (2007).

While Curtin has adequately alleged that Pebbly Beach is an essential facility, it has not adequately alleged that the essential facilities exception applies here. First, Curtin did not allege that SCICo is its competitor. *See Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976, 983 (9th Cir. 1988). Indeed, in its opposition papers, Curtin clarified that "there are absolutely no factual allegations that SCICo, on its own, participates in the freight shipping market." Thus, Curtin failed to allege that

the essential facility exception plausibly applies to SCICo.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Second, though AFS is the lessee in the Exclusive Lease, it does not own and control Pebbly Beach.  *See MetroNet Serv. Corp. v. Quest Corp.*, 383 F.3d 1124, 1128 (9th Cir. 2004).  Thus, the essential facilities doctrine, also, does not apply to AFS.  *See Iqbal*, 556 U.S. at 678.

Accordingly, Curtin did not adequately allege a violation of § 2 claim against either SCICo or AFS.

**The Unfair Competition Law ["UCL"] Claim**

The Court, again, declines to exercise supplemental jurisdiction over the remaining state law UCL claim.  *See* 28 U.S.C. § 1367(c)(3).

Accordingly,

It is Ordered that the motions to dismiss be, and hereby are, Granted with prejudice.

Date:  February 20, 2018

_____

Terry J. Hatter, Jr.
Senior United States District Judge