**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 7 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CURTIN MARITIME CORP., a California corporation,<br><br>          Plaintiff-Appellant,<br><br>v.<br><br>SANTA CATALINA ISLAND COMPANY, a Delaware corporation; AVALON FREIGHT SERVICES, LLC, a Delaware corporation,<br><br>          Defendants-Appellees. | No.   18-55338<br><br>D.C. No.<br>2:16-cv-03290-TJH-AGR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted September 11, 2019
Pasadena, California

Before:  RAWLINSON, IKUTA, and BENNETT, Circuit Judges.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

Curtin Maritime Corp. appeals from an order dismissing with prejudice its claims under Sections 1 and 2 of the Sherman Act.  We have jurisdiction under 28 U.S.C. § 1291.

**1.** The district court did not err in dismissing Curtin Maritime's Section 1 claim because Curtin Maritime failed to allege an antitrust injury to support that claim. "Antitrust injury" requires that the plaintiff "'prove that its alleged injury 'flows from that which makes defendants' acts unlawful.'" *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998) (citing *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986)). Curtin Maritime claims it suffered antitrust injury because the exclusive lease between Santa Catalina Island Co. (the Island Company) and Avalon Freight Services, LLC (Avalon Freight) precludes it from using the Pebbly Beach freight seaport, which in turn prevents it from competing in the Catalina freight-shipping market.  However, Curtin Maritime would have suffered the same injury had the Island Company leased the facility to multiple companies, but not Curtin Maritime. *See Lucas*, 140 F.3d at 1233.  Therefore, Curtin Maritime cannot demonstrate antitrust injury.

We respectfully disagree with the dissent that "both *Brunswick* and *Lucas Automotive* stand for the proposition that a plaintiff does not suffer an antitrust injury merely because a large player competes in the market," *dissent* at 1-2, and

2

decline the dissent's invitation to cabin *Lucas* to the facts of *Brunswick* based on one line in a factually dissimilar case.  Whatever the original teaching and limits of *Brunswick;* in *Lucas*, we extended its principles beyond market competition to instances of market exclusion.[1]  *See Lucas*, 140 F.3d at 1233.  We also did not condition our holding in *Lucas* on the pro-competitive aspects of the executive license.[2]

Because Curtin Maritime had three opportunities to allege an antitrust injury to support its Section 1 claim and was unable to do so, the district court did not abuse its discretion in denying Curtin Maritime leave to amend the Section 1 claim.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

**2.**     The district court did not err in dismissing Curtin Maritime's claim under Section 2 to the extent it was based on a theory of unlawful monopolization. Curtin Maritime failed to make the necessary allegation that a single entity (either the Island Company or Avalon Freight) had monopoly power by itself in the relevant market, or that Island Company and Avalon Freight constitute a single

---

[1] Even if *Lucas* was incorrectly decided, we are bound by decisions of prior panels. *See Miranda v. Selig*, 860 F.3d 1237, 1243 (9th Cir. 2017).

[2] We have serious doubts that the proper standard in the Ninth Circuit is to require a defendant to demonstrate a *pro*-competitive aspect to the agreement. *See Rebel Oil, Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (noting that the standard is whether defendant's conduct is beneficial or neutral to competition); *see also Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001) (same).

entity for purposes of a monopolization claim.  *See Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995).

The district court erred in dismissing Curtin Maritime's Section 2 claim to the extent it is based on a conspiracy-to-monopolize theory.  Curtin Maritime's Second Amended Complaint (SAC) plausibly alleged the elements of a claim for conspiracy to monopolize.  The SAC first alleged that the Island Company and Avalon Freight entered into an agreement in August 2012 that Avalon Freight would be the sole provider of freight services between Santa Catalina Island and the California mainland and, in exchange, Avalon Freight would share its profits with the Island Company.  According to the SAC, the parties entered into this agreement with the specific intent to monopolize the Catalina freight-shipping market.  Further, the SAC alleged that the Island Company and Avalon Freight took an overt act in furtherance of the conspiracy; they conducted a sham RFP process, which resulted in Avalon Freight being "awarded" an exclusive lease to the Pebbly Beach facility giving it 100 percent control of the "freight originating from or shipped to the City of Avalon by barge,"  Finally, the SAC alleged that this conspiracy precluded competition, causing injury to competitors, indeed, the district court held, and neither the Island Company nor Avalon Freight contest, that Curtin Maritime adequately alleged an antitrust injury with respect to the Pre-RFP

4

Agreement.  *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003); *see also Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 (9th Cir.1980).

Each party shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

FILED

OCT 07 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Curtin Maritime Corp. v. Santa Catalina Island Co.*, 18-55338
IKUTA, Circuit Judge, dissenting:

If two companies enter into a collusive agreement that completely precludes

*any* competition in a particular market, an excluded competitor has suffered an

antitrust injury. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An*

*Analysis of Antitrust Principles and Their Application* ¶ 348a (3rd & 4th eds., 2019

Cum. Supp.) ("[A] rival clearly has standing to challenge the conduct of rival(s)

that is illegal precisely because it tends to exclude rivals from the market, thus

leading to reduced output and higher prices."). That's exactly the situation here.

The Island Company and Avalon Freight entered into an exclusive lease agreement

that precludes Curtin Maritime or any other company from competing in the

market for shipping freight to some 4,000 inhabitants of Catalina Island for a

period of ten years. The defendants have failed to identify any plausible pro-

competitive effects of the exclusive lease. At least at the motion to dismiss stage,

Curtin Maritime has more than adequately alleged an antitrust injury to supports its

Section 1 claim.

The majority concludes otherwise based on *Brunswick Corp. v. Pueblo*

*Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977), and *Lucas Automotive Engineering, Inc.*

*v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir. 1998), a case in which we

applied *Brunswick*. But this reliance is misplaced. Both *Brunswick* and *Lucas*

*Automotive* stand for the proposition that a plaintiff does not suffer an antitrust injury merely because a larger player competes in a market.  In *Brunswick*, the plaintiffs alleged they were injured when a large owner of bowling alleys acquired three failing bowling alleys near where plaintiffs' bowling alleys were located. 429 U.S. at 480.  In *Lucas Automotive*, the plaintiff claimed it was injured when a larger competitor acquired the exclusive right to distribute one of four original equipment brands of vintage tires.  140 F.3d at 1231.  In both cases, the plaintiffs alleged that the defendants' superior competitive strength in a particular market was the source of the harm; the plaintiffs did not claim that the specific *agreement* at issue hurt competition.  Because in each case a company with less competitive strength could have lawfully entered into the same agreements (i.e., acquired the bowling alleys in *Brunswick* or acquired the exclusive distribution right in *Lucas Automotive*), and the resulting injury to the plaintiffs would have been the same, the plaintiffs had not suffered an antitrust injury.

These cases are not applicable here.  In this case, Curtin Maritime alleges it was injured due to the specific agreement at issue—the exclusive lease—not because of Avalon Freight's comparative competitive strength.  Indeed, Curtin Maritime's Section 1 claim would be the same regardless which competitor entered into an exclusive ten-year lease with the Island Company.  Moreover, "the

*Brunswick* line of cases," which includes *Lucas Automotive*, does not deny antitrust

standing to plaintiffs whose injury is caused by strategic agreements that have "*no*

*pro*-competitive aspects." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d

1000, 1013 (9th Cir. 2003).[1]  Here, the defendants have failed to identify any pro-

competitive aspects of the exclusive lease arrangement.   Under these

circumstances, Curtin Maritime has alleged an antitrust injury that survives a

motion to dismiss.  *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,

791 F.2d 1356, 1363–64 (9th Cir. 1986) (antitrust injury where agreement

"restrained competition between NFL teams and among football stadia by

restraining the Raiders attempting to move and operate in Los Angeles").

Accordingly, I dissent from the decision to affirm the dismissal of Curtin

Maritime's Section 1 claim but otherwise concur in the memorandum disposition.

---

[1] The majority asserts that *Lucas Automotive* "extended" the "principles" of *Brunswick* to cases where competitors are excluded from the relevant market, **Maj. at 3**, but in fact *Lucas Automotive* merely applied *Brunswick's* holding that a disgruntled competitor did not suffer an antitrust injury when a large company entered into an agreement that increased its market share but there was still competition in the relevant market.